978 P.2d 845

**Robert CATRON, Plaintiff–Appellant,**

v.

**TOKIO MARINE MANAGEMENT, INC., a New York Corporation and Tokio Marine and Fire Insurance Co., Ltd., Defendants–Appellees,**

**and**

**GTE Hawaiian Telephone Company, Inc., a Corporation, John Does 1–50, Jane Does 1–50, Doe Partnerships 1–50, Doe Corporations 1–50, Doe Governmental Units 1–50, and/or Doe Entities 1–50, Defendants.**

**No. 21926.**

Supreme Court of Hawai'i.

June 2, 1999.

Stephen Shaw, on the briefs, Honolulu, for plaintiff-appellant.

Archie T. Ikehara, Lee T. Nakamura and Deborah S. Jackson of Fujiyama, Duffy & Fujiyama, on the briefs, Honolulu, for defendants-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant Robert Catron appeals the order and judgment of the circuit court granting summary judgment in favor of defendant-appellee Tokio Marine and Fire Insurance Company, Ltd. on all counts related to allegations of bad faith handling of his workers' compensation claim. Because our opinions in *Best Place, Inc. v. Penn. America Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996) and *Hough v. Pacific Insurance Company*, 83 Hawai'i 457, 927 P.2d 858 (1996), decided subsequent to the circuit court's grant of summary judgment, are controlling, we vacate the order and judgment and remand for further proceedings.

## I. BACKGROUND

On January 6, 1993, Catron suffered a work-related injury while employed by Pan–Pacific Construction, Inc.[1] At the time of the incident, Tokio Marine was the workers' compensation carrier for Pan–Pacific. Catron filed a claim for workers' compensation benefits relating to this injury.

On September 16, 1994, Catron and Tokio Marine, for and on behalf of Pan–Pacific, entered into a settlement and release agreement under which Catron agreed to release his claims arising out of his work-related injury under Hawai'i Revised Statutes (HRS) Chapter 386. This agreement was approved by the Director of the Department of Labor and Industrial Relations on April 5, 1995.[2] Catron alleges that, subsequent to the execution of the settlement agreement, Tokio Marine delayed payments due. Moreover, Catron alleges that he received a large number of harassing telephone calls, both before and after the execution of the settlement agreement. Specifically, he states that "I logged

about 87 calls at the request of the Honolulu Police Department. In these calls someone would breath heavily or laugh or remain silent for several seconds and then hang up." In October 1994, Catron claims that the Honolulu Police Department placed a "phone trap" on his line and determined that the harassing calls were originating from the offices of Tokio Marine.

On May 11, 1995, Catron filed a twelve-count complaint in the instant case in which he alleged, *inter alia*, a cause of action against Tokio Marine for (1) malicious breach of contract and/or breach of the implied covenant of good faith and fair dealing; (2) negligence; (3) reckless or negligent supervision or hiring of employees; and (4) negligent and/or intentional infliction of emotional distress.[3] On August 10, 1995, Tokio Marine filed three separate motions for summary judgment on the grounds that (1) the circuit court lacked jurisdiction over all counts in the complaint because the original jurisdiction provision of the workers' compensation statute barred the court from hearing the causes of action alleged therein; (2) the settlement agreement barred all of Catron's claims; and (3) there was no recognized cause of action in Hawai'i for breach of an implied covenant of good faith.

On October 9, 1995, the circuit court granted Tokio Marine's motion for summary judgment on the issue of breach of an implied covenant of good faith, but denied it insofar as the cause of action was also plead as a malicious breach of contract claim. A hearing on Tokio Marine's remaining motions for summary judgment was held on November 2 and 9, 1995. After hearing, the circuit court granted summary judgment in favor of Tokio Marine on the basis that Catron's claims were barred by the original jurisdiction pro-

---

1. Because this appeal comes to us via the granting of Tokio Marine's motion for summary judgment, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue v. Roy*, 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997) (quoting *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). The recitation of facts herein, therefore, construes disputed facts in the light most favorable to Catron.

2. Hawai'i Revised Statutes (HRS) § 386–78(a) (Supp.1997) provides that "[n]o compromise in regard to a claim for compensation pending before the director shall be valid unless it is approved by decision of the director as conforming to this chapter and made a part of the decision."

3. Catron's complaint also named GTE Hawaiian Telephone Company, Inc., as a defendant. All claims against GTE were dismissed by stipulation on October 28, 1997 and GTE is not a party to this appeal.

vision of HRS Chapter 386. Tokio Marine's motion for summary judgment on the grounds that the settlement agreement barred Catron's claims was denied as moot because of the court's ruling on the jurisdiction issue. A written order denying Tokio Marine's motion for summary judgment on settlement grounds was filed on December 11, 1995. For reasons that are not explained in the record on appeal, the written order granting Tokio Marine's motion for summary judgment on jurisdictional grounds was not filed until August 4, 1998. Final judgment was entered in favor of Tokio Marine on August 26, 1998 and Catron timely appealed.

On appeal, Catron argues that our decisions in *Hough* and *Best Place*, *supra*, eliminate the legal bases for the circuit court's rulings that (1) Hawai'i does not recognize a cause of action for breach of the covenant of good faith and fair dealing in the insurance context and (2) the original jurisdiction provision of HRS Chapter 386 bars his claims. Tokio Marine counters that (1) *Hough* is distinguishable on its facts and (2) *Hough* and *Best Place* should not be applied retroactively to this case.

## II. DISCUSSION

### A. Hough and Best Place are controlling.

Catron argues that our decisions in *Hough* and *Best Place*, decided subsequent to the circuit court's rulings on Tokio Marine's motions for summary judgment, directly contradict the legal bases for the circuit court's orders granting summary judgment. We agree.

4. We recognize that, in the instant case, Catron's complaint alleges bad faith on the part of Tokio Marine in the handling and execution of workers' compensation benefits due under the September 16, 1994 settlement and release agreement, rather than under the original insurance contract between Tokio Marine and Pan–Pacific. Nevertheless, the policy considerations underlying our decision in *Best Place* are equally applicable here. "Without the threat of a tort action, insurance companies have little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by delaying payment." *Best Place*, 82 Hawai'i at 132, 920 P.2d at 346. It would not be sensible, in our view, to abrogate the duty of good faith owed by an

In *Best Place*, we held that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." 82 Hawai'i at 132, 920 P.2d at 346. "The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance." *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 573 (1986)). *Best Place* directly contradicts the circuit court's ruling that Hawai'i does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.[4]

Tokio Marine argues that *Best Place* is distinguishable because its conduct did not deny payments or refuse to settle the claim. However, failure to pay a claim is not a *sine qua non* of a cognizable cause of action for bad faith. We are unable to state that the conduct alleged by Catron could not, as a matter of law, form the basis for a bad faith claim if proven to be true. Therefore, the circuit court erred in granting summary judgment in favor of Tokio Marine. Tokio Marine's argument that *Best Place* should not be applied retroactively is addressed, *infra*.[5]

HRS § 386–5 (1993) provides, in relevant part, that:

The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the

insurer to a third-party insured because of the signing of a settlement agreement.

5. Insofar as "the tort of bad faith is not a tortious breach of contract, but rather a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract," *Best Place*, 82 Hawai'i at 131, 920 P.2d at 345 (citation omitted), our recent decision in *Francis v. Lee Enterprises*, 89 Hawai'i 234, 971 P.2d 707 (1999), does not impact the result in this case. Our disavowal in *Francis* of a cause of action for tortious breach of contract does not restrict Catron's claim for bad faith handling of his workers' compensation claim.

employee shall exclude all other liability of the employer to the employee ... or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

HRS § 386–73 (1993) provides that "[u]nless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter." Tokio Marine argues, and the circuit court agreed, that the director of labor and industrial relations had exclusive jurisdiction over Catron's claims.

■ In *Hough*, we held that "[b]y its plain language, HRS § 386–5, and indeed, the entire workers' compensation scheme applies only to 'work injuries.'" 83 Hawai'i at 464, 927 P.2d at 865. In *Hough*, the plaintiff filed a claim for, *inter alia*, bad faith and intentional and negligent infliction of emotional distress against his previous employer's workers' compensation insurer for injuries allegedly incurred in the handling of his claim for benefits. In reversing the circuit court's grant of summary judgment in favor of the insurer, we held that "[b]ecause Hough's common law tort claims do not "arise under" HRS Chapter 386, the director of labor and industrial relations does not have original jurisdiction under HRS § 386–73." *Id.* at 466, 927 P.2d at 867. Moreover, "the relevant statutory language and our prior interpretations of that language do not reasonably envision emotional and physical suffering allegedly caused by an insurer's ... outrageous and intentional denial of medical benefits and disability payments as an injury arising out of and in the course of employment." *Id.* at 465, 927 P.2d at 866 (some quotation signals omitted).

■ *Hough* is directly controlling here. Insofar as Catron's claims do not arise under HRS Chapter 386, the exclusive remedy and original jurisdiction provisions in the workers' compensation statute do not apply. Catron's alleged claims for relief of tortious conduct on the part of Tokio Marine are not within the original jurisdiction of the director of labor and industrial relations.[6] The circuit court erred in granting summary judgment on this basis.

### B. Hough and Best Place apply retroactively.

Although judicial decisions are assumed to apply retroactively, such application is not automatic.... [W]here substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only.

*State v. Ikezawa*, 75 Haw. 210, 214–15, 857 P.2d 593, 597–98 (1993) (footnote omitted).

In *Ikezawa*, we held that, because the defendant in that case had relied on clear precedent, a subsequent case overruling that precedent would not be applied retroactively. Retroactive application of the subsequent case in *Ikezawa* would have resulted in clear prejudice to the defendant. Distinguishing *Ikezawa*, in *State v. Okuno*, 81 Hawai'i 226, 229, 915 P.2d 700,

---

6. This case is distinguishable from our recent decision in *Amantiad v. Odum*, 90 Hawai'i 152, 977 P.2d 160 (1999). In that case, we held that "a settlement or compromise of future workers' compensation benefits constitutes a controversy or dispute within the original jurisdiction of the Director of Labor[.]" 90 Hawai'i at 166, 977 P.2d at 174. In *Amantiad*, the circuit court lacked jurisdiction to enforce a settlement agreement regarding payments of compensation for a work-related injury. Here, Catron is not attempting to enforce the settlement agreement and receive payments for his work-related injury. Instead, as in *Hough*, Catron is seeking reparations for damages outside of the scope of the payment of workers' compensation benefits.

[C]ourts have upheld the right to bring an action for independent intentional torts because the tortious conduct, which gives rise to the action, does not arise out of the original employment relationship. It occurs after employment and arises out of the employee's relationship with the insurance carrier after the employment relationship has been terminated. It is predicated on an act after the injury and during the settlement of the claim. The insurance carrier is no longer the "alter ego" of the employer, but rather is involved in an independent relationship to the employee when committing such tortious acts.

*Hough*, 83 Hawai'i at 466, 927 P.2d at 858 (quoting *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257, 261–62 (1980)).

703, we applied a judicial decision retroactively because

> Okuno has failed to show how he is substantially prejudiced by the retrospective application of the court's interpretation of HRS § 286–261(d) in *State v. Toyomura,* 80 Hawai'i 8, 904 P.2d 893 (1995). This court was afforded its first opportunity, in *Toyomura,* to interpret section 286–261(d); thus, there is no previous precedent upon which Okuno could have relied. Retrospective application of *Toyomura* to cases pending when it was decided satisfies the requirements enunciated in *Ikezawa.*

*State v. Opupele,* 88 Hawai'i 433, 440, 967 P.2d 265, 272 (1998) (brackets and ellipses in original) (some brackets omitted).

■ Tokio Marine argues that, at the time the circuit court made its ruling, clear precedent held that Hawai'i did not recognize a cause of action for bad faith in the insurance context. The sole case cited by Tokio Marine for this proposition is *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625 (1982), in which we held that there was no cause of action for bad faith termination of an at-will employment contract in Hawai'i. Tokio Marine's argument is refuted by the discussion of *Parnar* in *Best Place,* as follows:

> One exception to [the] well established principle of contract law [that every contract imposes upon each party a duty of good faith and fair dealing] is the at-will employment doctrine. In *Parnar* [ ], we noted that an at-will employment contract, by definition, is terminable at the will of either party, for any reason or no reason at all.... Given the *unique nature of the at-will employment relationship,* this court refused to imply a duty to terminate in good faith. Our holding in *Parnar,* however, is limited to the at-will employment context[.]

82 Hawai'i at 124 n. 5, 920 P.2d at 338 n. 5 (emphasis added).

*Best Place* did not overrule *Parnar,* and it is clear from our decision therein that the question whether Hawai'i recognized a cause

of action for bad faith in the insurance context was previously unsettled. Therefore, we disagree with Tokio Marine's assessment that it detrimentally relied upon clear Hawai'i precedent at the time of the circuit court's ruling. Our decisions in *Hough* and *Best Place* addressed novel and previously unresolved legal issues. The situation in *Ikezawa,* in which a defendant relied upon "a clearly enunciated, but subsequently overruled, judicial decision," [7] is not present herein.

■ Tokio Marine additionally argues that substantial prejudice would result from retroactive application of *Hough* and *Best Place* to this case because, "[t]o reopen this matter nearly four years later and require [the parties] to locate evidence, attempt to revive faded memories and vanished witnesses, is substantially unfair." We cannot agree that this is a proper basis to deny Catron his requested relief. This case has not, to date, achieved final resolution. Catron's appeal was timely filed after the entry of final judgment. The prejudice attributable to the length of time which elapsed between the circuit court's order and this appeal applies to both parties equally. Indeed, because Catron, as the plaintiff, has the burden of proof, any difficulty in adducing evidence would appear to cause more harm to his position than to that of Tokio Marine. Therefore, we reject Tokio Marine's argument that retroactive application of the correct law to this case would result in substantial prejudice.

## III. CONCLUSION

For the foregoing reasons, we vacate the circuit court's grant of summary judgment in favor of Tokio Marine on all counts and remand this case for further proceedings.

---

7. *Opupele,* 88 Hawai'i at 441, 967 P.2d at 273.